OPINION
Defendant-appellant, Enis Bland, appeals from the November 16, 2000 judgment of conviction of the Franklin County Court of Common Pleas sentencing her to fifteen years to life on one count of murder and a consecutive sentence of three years for a gun specification. For the reasons that follow, we affirm.
On September 8, 1999, appellant had an argument with her 19-year-old son, Avery Bland, over a bicycle Avery had left in the living room. The argument escalated to the point where Avery threw a tube of lipstick at appellant, hitting her in the foot. Avery also damaged a table in the living room. Appellant became fearful and went outside to a storage unit where she retrieved a Raven .25 caliber handgun. She placed the gun in her purse and returned to the house. Avery had gone upstairs, apparently to retrieve some tools, and then returned downstairs where he began working on his bicycle. Appellant and Avery resumed arguing, and Avery approached appellant. Appellant pushed Avery. Avery approached again, and appellant pushed him away. Avery began hitting appellant in her chest with his fists. After pushing him away again, appellant pulled out the gun and shot him once in the abdomen.
Avery knocked over a glass table in the kitchen and then ran outside where he stated, "My mom shot me. My mom shot me." (Tr. 36.) Neighbors called 9-1-1 and attempted to assist Avery. Meanwhile appellant emerged from the apartment briefly and returned to her apartment where she telephoned the police and told them that she had shot her son.
Avery was transported to Grant Hospital where he died during surgery.
Appellant was indicted by the Franklin County Grand Jury on one count of aggravated murder with a firearm specification. On January 19, 2000, at the request of appellant, the trial court replaced appellant's court appointed attorney with another attorney. On March 9, 2000, the trial court ordered that appellant be evaluated for competency to stand trial and for her mental condition at the time of the offense. Bradley A. Hedges, Ph.D., of Netcare, evaluated appellant on March 18, 2000. On April 13, 2000, the parties stipulated to the admission of the psychological report, and the trial court found appellant competent to stand trial. On June 28, 2000, the trial court ordered a second evaluation as to appellant's competency and mental condition at the time of the offense. Kristen E. Haskins, Psy.D., evaluated appellant on July 14, 2000. Both psychologists found that appellant was not suffering from a mental illness or mental retardation which would significantly interfere with her ability to understand the nature and objectives of the proceedings against her or of assisting counsel in her own defense. After trial, all four reports were ordered sealed and made part of the record on appeal.
The case proceeded to a jury trial on November 7, 2000. On November 15, 2000, the jury found appellant guilty of the lesser offense of murder and the firearm specification. In a judgment entry dated November 16, 2000, the trial court sentenced appellant to fifteen years to life, plus three years for the firearm specification.
This appeal followed, with appellant assigning as error the following:
ASSIGNMENT OF ERROR #1:
 A TRIAL COURT ERRS WHEN IT DETERMINES THAT AN APPELLANT IS COMPETENT TO STAND TRIAL WHERE THE APPELLANT MANIFESTS A PREOCCUPATION WITH WAXWORMS, VOODOO, AND POISON.
ASSIGNMENT OF ERROR #2:
 APPELLANT IS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHERE DEFENSE COUNSEL FAILS TO OBTAIN A MEDICAL EXPERT TO PRESENT A DEFENSE THAT THE CAUSE OF DEATH IS DUE TO MEDICAL NEGLIGENCE.
ASSIGNMENT OF ERROR #3:
 APPELLANT IS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHERE DEFENSE COUNSEL FAILS TO REQUEST THAT THE TRIAL JUDGE INSTRUCT THE JURY TO DISREGARD RESPONSES OF WITNESSES WHERE THE UNDERLYING PROSECUTORIAL QUESTION DRAWS AN OBJECTION THAT IS SUBSEQUENTLY SUSTAINED.
In her first assignment of error, appellant argues that the trial court erred in finding appellant competent to stand trial. At the hearing in which the trial court found appellant competent to stand trial, appellant made a reference to being poisoned: "I felt someone used wax worms on me. I moved from wax worms to voodoo, now I'm with poison. I do remember before the incident took place and my son, I can remember hearing rumors someone put poison. The apartment — [.]" (Proceedings of April 13, 2000 at 11.)
Appellant also refused to wear civilian clothes during trial, and insisted on wearing her jailhouse attire. When left alone in an interrogation room, appellant was videotaped mumbling to herself.
During trial, appellant made numerous references to either her or her son being poisoned:
 I felt like the real reason, the reason I became very alarmed and afraid of him is because I felt like that day I had been poisoned. [Tr. II at 308.]
 As I came back downstairs Avery and I began to argue again. I knew from that point there, and really a little bit earlier before it escalated, that I should stop arguing with my son, but I couldn't bring myself under control. That's why I felt like I had been poisoned. [Tr. II at 313.]
 Yes, I was really afraid. I thought, like I mentioned earlier, I really thought that Avery had something on him, because all that he was doing was misleading me, you know, things that I saw, you know. And I don't know if I was actually poisoned or if that's just the fear was so great in me from him. He just really had me afraid. [Tr. II at 316-317.]
 Yes. I was really afraid. That's why I said I felt like I had been poisoned or something, because I couldn't get control of myself. I couldn't get control of my son. [Tr. II at 318.]
 I didn't have any control. That's why I felt like I had been poisoned too, as well as my son. [Tr. II at 319.]
 Like I was telling you, I know I was doing things. Even that day when I saw some pictures of myself, it didn't look like me. I know that was me, but it's not my regular appearance or anything, you know. I just know that I just really wasn't myself. Something else was there. It wasn't a mental thing. It's just that I feel that it must have been poison. [Tr. II at 328-329.]
 I think he could have gotten some poison in the cocaine that he was using. There were rumors that people put poison in cocaine, a variety of different types of poison and mixing the hard rock coke. And I don't know if he could have gotten some in the marijuana. [Tr. II at 352.]
 I said that I thought I believe that it could have been — the poison could have been in the coffee creamer as well as some of the food. Sometimes I would cook food. We all didn't eat together because we all did different things. All my kids had keys to the apartment. So they could come in and get out whenever they were ready, because they went to school and other things. I would cook and leave the food out, covered over, on top of the oven. When they would come in all they would have to do is heat it and fix their own meal. So I felt like it could have been put in that. It could have been put in the cereals that we had, the ones that had been opened. [Tr. II at 353.]
 Q. So you think it's possible that some of the neighbors or these other people came into your home and poisoned some of your family's food?
A. I do believe that. [Tr. II at 354.]
Based on these instances, appellant argues the trial court should have determined that she was incapable of assisting in her defense and not competent to stand trial.
The standard for competency is set out in R.C. 2945.37(G), which provides:
 A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial * * *.
The term "mental illness" does not necessarily equate with the definition of legal incompetence. State v. Berry (1995), 72 Ohio St.3d 354, syllabus. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel. State v. Bock (1986), 28 Ohio St.3d 108,110.
Here, the trial court had the benefit of not one, but two independent psychological reports concerning appellant's competency. Appellant's concerns about being poisoned were noted and discussed by both psychologists and found not to be determinative of appellant's ability to understand the proceedings and assist in her defense. Appellant's counsel did not raise the issue during trial. Despite having two pre-trial evaluations, appellant apparently believes the trial court should have held sua sponte another competency hearing based on appellant's behavior during trial.
In determining whether to sua sponte hold a competency hearing, the court should consider: (1) doubts expressed by counsel as to competency; (2) evidence of irrational behavior; (3) defendant's demeanor at trial; and (4) prior medical opinion concerning competency. State v. Draughn (1992), 76 Ohio App.3d 664, 669. The decision whether to conduct a competency hearing after trial has commenced is a matter resting within the trial court's sound discretion. State v. Filiaggi (1999),86 Ohio St.3d 230.
Here, the trial court had the benefit of two psychological reports that discussed appellant's belief that she had been poisoned. Both psychologists concluded that appellant's beliefs did not significantly interfere with her ability to effectively assist in her own defense or interfere with her ability to understand the charges and proceedings against her. There is no evidence in the record that her own counsel expressed any doubts as to her competency during trial, although at sentencing, he did refer to appellant's history of mental illness. But, as discussed above, mental illness does not necessarily equate with a defendant being found incompetent to stand trial. The trial court did not abuse its discretion in this regard. The first assignment of error is not well-taken and is overruled.
In her second and third assignments of error, appellant contends that she was denied effective assistance of trial counsel according to the standards set forth in Strickland v. Washington (1984), 466 U.S. 668. First, appellant claims her trial counsel was ineffective for failing to obtain a medical expert to refute the claims of Dr. Fardal of the Franklin County Coroner's Office. Second, appellant claims that trial counsel was ineffective in failing to request a curative instruction from the trial court when defense counsel's objections were sustained.
In order to prevail on her claim of ineffective assistance of counsel under Strickland, appellant must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v. Reynolds (1998), 80 Ohio St.3d 670,674. "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, supra, at 686. Thus, a two-part test is necessary to examine such claims. First, appellant must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. State v. Keith (1997), 79 Ohio St.3d 514,534. Second, appellant must show that, but for counsel's errors, there is a reasonable probability that the results of the trial would be different. Id.
The burden of showing ineffective assistance of counsel is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558 ("[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel"); State v. Carpenter (1996),116 Ohio App.3d 615, 626 (court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). Applying these standards, we find that appellant has failed to show that her counsel was ineffective.
Before trial, appellant expressed dissatisfaction with her court-appointed counsel for not pursuing the theory that her son's death was the result of a surgical mishap. "It is the general rule that one who inflicts injury upon another is criminally responsible for that person's death, regardless of whether different or more skillful medical treatment may have saved his life. [citations omitted] This rule has been qualified where there has been a gross or willful maltreatment of the patient by the medical personnel, [citations omitted] which is shown to have been an independent intervening cause of the patient's death." State v. Johnson (1978), 56 Ohio St.2d 35, 40. Simple negligence is not enough. State v. Beaver (1997), 119 Ohio App.3d 385, 394.
Here, there was no evidence of gross negligence or willful maltreatment of Avery Bland. On cross-examination, defense counsel inquired into this issue. Dr. Fardal, who conducted the autopsy on Avery Bland, testified that the surgeon who was trying to stop the bleeding from the gunshot wound inadvertently made a small defect in the wall of the stomach that wasn't necessary. However, Dr. Fardal also testified that the defect was sutured closed, there was no blood leaking out of it, there were no gastric contents leaking out of it, and there was no evidence of peritonitis due to leakage from the gastrointestinal tract. (Tr. 172.) Dr. Fardal further testified that, in his opinion, the sole cause of death was the gunshot wound. (Tr. 173.) This evidence was uncontroverted. Without bringing in evidence outside the record, appellant cannot show that another medical expert would have testified that Avery Bland's death was due to an independent intervening cause. Appellant cannot establish either prong of the Strickland test and, accordingly, the second assignment of error is not well-taken and is overruled.
In her third assignment of error, appellant argues she received ineffective assistance of counsel for failing to request a cautionary instruction regarding sustained objections. The instruction appellant asserts her trial counsel should have requested was, in fact, given twice, once prior to the commencement of trial, and once in the closing jury instructions. (Tr. 25, 446.) Appellant has not established that counsel's performance fell below an objective standard of reasonable representation and, accordingly, the third assignment of error is not well-taken and is overruled.
Based on the foregoing, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 ____________________ LAZARUS, J.
BRYANT, P.J., and TYACK, J., concur.